## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JAKE VINCENT, Derivatively on Behalf of Nominal Defendant ORTHOFIX MEDICAL, INC., | ) ) ) |
| | ) Case No. 2:24-cv-01058 |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) |
| JON C. SERBOUSEK, KEITH VALENTINE, JOHN BOSTJANCIC, PATRICK KERAN, KIMBERLY A. ELTING, DOUGLAS C. RICE, WAYNE BURRIS, CATHERINE M. BURZIK, JAMES M. HANNON, JOHN HENNEMAN, III, JAMES F. HINRICHS, SHWETA SINGH MANIAR, LILLY MARKS, MICHAEL E. PAOLUCCI, JOHN E. SICARD,  and THOMAS A. WEST, | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| ORTHOFIX MEDICAL, INC., | ) |
| | ) |
| Nominal Defendant. | ) |

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Jake Vincent ("Plaintiff"), by and through his undersigned attorneys, brings this verified stockholder derivative action on behalf of nominal defendant Orthofix Medical, Inc. ("Orthofix" or the "Company"), against certain of the Company's executive officers and its Board of Directors (the "Board") for breaches of fiduciary duties and violations of federal law by the Individual Defendants (defined below).  Plaintiff's allegations are based on personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on*, inter alia*, the investigation conducted by his counsel, including review of publicly available information regarding the Company; the allegations of class action complaints

filed in the Securities Class Actions captioned *Bernal v. Orthofix Medical Inc.,* Case No. 2:24-cv-00690-JRG (E.D. Tex. Aug. 21, 2024) (the "*Bernal* Securities Class Action") and *O'Hara v. Orthofix Medical, Inc. et al.,* Case No. 3:24-cv-01593-LL-SBC (S.D. Cal. Sep. 6, 2024); (the "*O'Hara* Securities Class Action" and, together with the *Bernal* Securities Class Action, the "Securities Class Actions"); conference call transcripts and announcements; filings with the United States Securities and Exchange Commission (the "SEC"); press releases disseminated by Orthofix; legal filings; news reports; and securities analysts' reports about the Company.

## NATURE OF THE ACTION

1.      This shareholder derivative action is brought on behalf of Orthofix against certain officers and members of the Company's Board for breaches of their fiduciary duties between at least October 11, 2022 and March 5, 2024, inclusive (the "Relevant Period"), and for violations of the federal securities laws caused by the issuance of materially false and misleading statements issued, or caused to be issued, by the Individual Defendants in the Company's SEC filings and other public statements. The Individual Defendants' wrongdoing has exposed the Company to massive potential liability, as well as the significant defense costs in the Securities Class Actions.

2.      Orthofix is global medical device company that manufactures and distributes products for orthopedic and spine care.

3.      On October 11, 2022, Orthofix announced that it had entered into an agreement to merge with SeaSpine, a medical technology company that designs and manufactures surgical solutions for spine surgeries (the "Merger"). During the Merger announcement, the Company further disclosed that SeaSpine's President and Chief Executive Officer ("CEO"), Defendant Valentine, would serve as President, CEO, and as a member of the Board of the Company after the Merger.

4.      On November 8, 2022, the Company filed with the SEC a draft registration statement on Form S-4, registering Orthofix shares to be issued to SeaSpine shareholders in exchange for SeaSpine shares following the Merger (the "Registration Statement").

5.      On November 21, 2022, Orthofix and SeaSpine announced that SeaSpine's Chief Financial Officer ("CFO") and Chief Operating Officer ("COO"), Defendant Bostjancic, and SeaSpine's Senior Vice President and General Counsel, Patrick Keran, would serve as CFO and Chief Legal Officer ("CLO"), respectively, of the new combined company.

6.      On November 22, 2022, the SEC declared the Registration Statement effective.

7.      On November 23, 2022, the Company filed with the SEC a misleading prospectus on Form 424B3, soliciting shareholder approval for the Merger (the "Prospectus"). The Prospectus forms part of the Registration Statement (the "Offering Documents").

8.      On January 4, 2023, Orthofix and SeaSpine announced the completion of the Merger.

9.      Throughout the Relevant Period, the Individual Defendants issued false and misleading statements, representing that Company management was committed to conducting business in accordance with the highest ethical and legal standards and that the Company maintained an effective system of internal controls.

10.      The truth emerged on September 12, 2023, when the Company issued a press release, announcing a "unanimous decision by the Board's independent directors to terminate for cause Keith Valentine, John Bostjancic and Patrick Keran from those respective roles" after an investigation by the Board that revealed "that each of these executives engaged in repeated inappropriate and offensive conduct that violated multiple code of conduct requirements and was inconsistent with the Company's values and culture."

11.    On this news, the price of Orthofix's stock declined 30.2% in one day, from a close of $18.63 per share on September 11, 2023 to a close of $13.01 per share on September 12, 2023.

12.    Despite this disclosure, the price of Company stock remained artificially inflated as the Individual Defendants continued to issue false and misleading statements regarding the Company's internal controls.

13.    The full truth emerged on March 5, 2024, when the Company revealed in an annual report, filed on Form 10-K with the SEC, that Orthofix's "internal control over financial reporting was not effective as of December 31, 2023."

14.    On this news, the price of Orthofix's stock declined .5%, from a close of $13.07 per share on March 4, 2024, to a close of $13.00 per share on March 5, 2024.

15.    Moreover, prior to the corrective disclosures, one Company insider sold shares of Company stock while in possession of material non-public information. This Company insider reaped thousands of dollars in illicit profits, selling Company stock at prices that were artificially inflated due to the false and misleading statements detailed herein.

16.    As a result of the foregoing, the Securities Class Actions were filed against the Company and certain of its executive officers, exposing the Company to massive class-wide liability.

17.    In light of the breaches of fiduciary duty by the Individual Defendants, most of whom are the Company's current directors, the substantial likelihood of the directors' liability in this derivative action and the Securities Class Actions, and that the Individual Defendants are beholden to each other based on their longstanding business and personal relationships, the Individual Defendants do not possess the requisite level of disinterestedness and independence to consider a demand to commence litigation against themselves and the other Individual Defendants

on behalf of the Company. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9).

19.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

20.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

21.     In connection with the acts, conduct and other wrongs complained of herein, the Individual Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

22.     Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. §1391(b)(1), as Orthofix maintains its principal executive offices in this District and a substantial portion of the acts and omissions alleged herein, including the issuance and dissemination of materially false and misleading information, occurred in this District.

## PARTIES

### *Plaintiff*

23.     Plaintiff is, and has been at all relevant times, a shareholder of Orthofix. Plaintiff has continuously owned Orthofix stock since first purchasing the stock on April 20, 2022.

### *Nominal Defendant*

24.    Nominal Defendant Orthofix is incorporated under the laws of the State of Delaware.

25.    The Company's principal executive offices are located at 3451 Plano Parkway, Lewisville, Texas 75056. Orthofix's common stock trades on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "OFIX."

***Individual Defendants***

26.    Defendant Jon C. Serbousek ("Serbousek") served as the Company's President, CEO, and as a member of the Board from November 2019 until the Merger. After the Merger, Defendant Serbousek served as the Company's Executive Chairman until July 2023. According to the Company's public filings, Defendant Serbousek received $15,628,123 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Serbousek beneficially owned 514,778 shares of Company stock, worth roughly $6.7 million[1] and constituting 1.4% of the Company's total outstanding shares. Defendant Serbousek is named as a defendant in the Securities Class Action.

27.    Defendant Keith Valentine ("Valentine") served as the Company's President, CEO, and as a member of the Board from the Merger until his removal from the Board in September 2023. Prior to serving in that role, Defendant Valentine served as President and CEO of SeaSpine from May 2015 until the Merger. According to the Company's public filings, Defendant Valentine received $6,484,267 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Valentine beneficially owned 160,607 shares of Company stock, worth roughly $2.1 million. Defendant Valentine is named as a defendant in the Securities Class Actions.

---

[1] Valuations of the Individual Defendants' personal holdings of Company stock are calculated based on the $13.08 per share closing price of Orthofix common stock on April 22, 2024.

28.     Defendant John Bostjancic ("Bostjancic") served as the Company's CFO from the Merger until his removal by the Board in September 2023. Prior to serving in that role, Defendant Bostjancic served as SeaSpine's COO and CFO from December 2014 until the Merger. According to the Company's public filings, Defendant Bostjancic received $1,847,889 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Bostjancic beneficially owned 47,286 shares of Company stock, worth roughly $618,501. Defendant Bostjancic is named as a defendant in the *Bernal* Securities Class Action.

29.     Defendant Patrick Keran ("Keran") served as the Company's CLO from the Merger until his removal from the Board in September 2023. Prior to serving in that role, Defendant Keran served as Senior Vice President and General Counsel of SeaSpine from October 2015 until the Merger. According to the Company's public filings, Defendant Keran received $1,832,958 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Keran beneficially owned 33,122 shares of Company stock, worth roughly $433,236. Defendant Keran was named is named as a defendant in the Securities Class Actions.

30.     Defendant Kimberly A. Elting ("Elting") served as the Company's President, Global Orthopedics from April 2022 until July 2024. Prior to serving in that role, Defendant Elting served as the Company's CLO from September 2016 until December 2022. While serving as CLO, Defendant Elting additionally served as Chief Administrative Officer from November 2017 until July 2020 and as Chief Development Officer from July 2020 until December 2022. According to the Company's public filings, Defendant Elting received $3,552,657 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Elting beneficially owned 199,144 shares of Company stock, worth roughly $2.6 million. Defendant Elting is named as a Defendant in the *O'Hara* Securities Class Action.

31.    Defendant Douglas C. Rice ("Rice") served as the Company's CFO from September 2014 until the Merger. According to the Company's public filings, Defendant Rice received $3,965,945 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Rice beneficially owned 184,837 shares of Company stock, worth roughly $2.4 million. Defendant Rice is named as a Defendant in the *O'Hara* Securities Class Action.

32.    Defendant Wayne Burris ("Burris") has served as a member of the Board since June 2023 and serves as Chair of the Audit & Finance Committee (the "Audit Committee"). Defendant Burris additionally served as a member of the Board from September 2021 until January 2023. According to the Company's public filings, Defendant Burris received $539,703 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Burris beneficially owned 10,163 shares of Company stock, worth roughly $132,932. Defendant Rice is named as a Defendant in the *O'Hara* Securities Class Action.

33.    Defendant Catherine M. Burzik ("Burzik") served as a member of the Board from 2021 until June 2024. According to the Company's public filings, Defendant Burzik received $510,168 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Burzik beneficially owned 128,823 shares of Company stock, worth roughly $1.7 million. Defendant Burzik is named as a Defendant in the *O'Hara* Securities Class Action.

34.    Defendant James M. Hannon ("Hannon") has served as a member of the Board since June 2020. According to the Company's public filings, Defendant Hannon received $376,249 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Hannon beneficially owned 57,913 shares of Company stock, worth roughly $757,502. Defendant Hannon is named as a Defendant in the *O'Hara* Securities Class Action.

35.    Defendant John Henneman, III ("Henneman") has served as a member of the Board

since the Merger and serves as a member of the Audit Committee. Prior to serving in that role, Defendant Henneman served as a member of SeaSpine's Board from July 2015 until the merger. According to the Company's public filings, Defendant Henneman received $355,416 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Henneman beneficially owned 80,540 shares of Company stock, worth roughly $1.1 million.

36.    Defendant James F. Hinrichs ("Hinrichs") served as a member of the Board from April 2014 until June 2024. According to the Company's public filings, Defendant Hinrichs received $388,749 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Hinrichs beneficially owned 117,260 shares of Company stock, worth roughly $1.5 million. Defendant Hinrichs is named as a Defendant in the *O'Hara* Securities Class Action.

37.    Defendant Shweta Singh Maniar ("Maniar") has served as a member of the Board since the Merger and serves as a member of the Audit Committee. According to the Company's public filings, Defendant Maniar received $355,416 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Maniar beneficially owned 20,080 shares of Company stock, worth roughly $262,646. During the Relevant Period, Defendant Maniar sold 4,262 shares of Company stock while in possession of material non-public information for proceeds of $76,650. While the price of Orthofix stock was artificially inflated due to the Individual Defendants' false and misleading statement detailed herein, Defendant Maniar made the following sale of Company stock:

- On March 10, 2023, Defendant Maniar sold 4,262 shares of personal holdings of Company stock at an average price of $17.75 per share, reaping $75,760 in proceeds.

38.    Defendant Lilly Marks ("Marks") served as a member of the Board from June 2015

until the Merger. According to the Company's public filings, Defendant Marks received $255,022 in 2022 in compensation from the Company. Defendant Marks is named as a Defendant in the *O'Hara* Securities Class Action.

39.     Defendant Michael E. Paolucci ("Paolucci") has served as a member of the Board since March 2016. According to the Company's public filings, Defendant Paolucci received $376,249 in 2023 in compensation from the Company. As of April 22, 2024, Defendant Paolucci beneficially owned 80,614 shares of Company stock, worth roughly $1.1 million. Defendant Paolucci is named as a Defendant in the *O'Hara* Securities Class Action.

40.     Defendant John E. Sicard ("Sicard") served served as a member of the Board from March 2018 until the Merger. According to the Company's public filings, Defendant Sicard received $245,022 in 2022 in compensation from the Company. Defendant Sicard is named as a Defendant in the *O'Hara* Securities Class Action.

41.     Defendant Thomas A. West ("West") served as a member of the Board from November 2021 until the Merger. According to the Company's public filings, Defendant West received $245,022 in 2022 in compensation from the Company. Defendant West is named as a Defendant in the *O'Hara* Securities Class Action.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

42.     Because of their positions as officers and/or directors of Orthofix, and their ability to control the business and corporate affairs of the Company, the Individual Defendants owed Orthofix and its shareholders fiduciary obligations of good faith, loyalty, trust, and candor and were required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner at all relevant times.

43.     Therefore, the Individual Defendants were required to act in furtherance of the best

interests of Orthofix and its shareholders.

44.     Each director and officer of the Company owes to Orthofix and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

45.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Orthofix, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

46.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of trust, loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Orthofix, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

47.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, earnings, internal controls, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's internal controls and legal and ethical compliance, and the Individual

Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

48.    To discharge their duties, the officers and directors of Orthofix were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Orthofix were required to, among other things:

(a)    Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Orthofix's own Code of Conduct;

(b)    Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(c)    Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion;

(d)    Remain informed as to how Orthofix conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(e)    Establish and maintain systematic and accurate records and reports of the business and internal affairs of Orthofix and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to

be made of, said reports and records;

       (f)    Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Orthofix's operations would comply with all applicable laws and Orthofix's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

       (g)    Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

       (h)    Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above; and

       (i)    When put on notice of problems with the Company's business practices, operations, or internal controls, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

49.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Orthofix.

50.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Orthofix and were at all times acting within the course and scope of such agency.

51.    Each of the Individual Defendants breached his or her fiduciary duties as alleged herein, both individually and in concert with the other Defendants.

## **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

52.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

53.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

54.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company, purposefully, recklessly, or negligently, to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

55.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of Orthofix, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

56.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

57.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Orthofix and at all times acted within the course and scope of such agency.

## ORTHOFIX'S CODE OF CONDUCT

58.    Orthofix's Code of Conduct applies to all "directors, officers, and employees" of the Company and violations of the Code of Conduct will lead to "disciplinary action, up to and including termination of employment."

59.    The Code of Conduct states that its purpose is to encourage Company personnel to:

- Comply with the law
- Be honest and ethical
- Be respectful, treat others fairly, and protect Company resources
- Be responsible
- Promptly report misconduct
- Be vigilant and speak up

60.    In a section subsection titled "Accurate Financial Reporting," the Code of Conduct states:

> Orthofix requires honest and accurate record keeping and reporting of information and data to make responsible business decisions. Orthofix Personnel and Associates must ensure that all documentation, including financial documents, records, quality controls, expense reports, and certifications accurately reflect the true nature of a fact or event and are completed, retained and destroyed in accordance with the Company's document retention and destruction standards.

61.    Within the same subsection, the Code of Conduct states the following with respect to internal controls, in pertinent part:

> It is Orthofix's policy to maintain books, records, and accounts that accurately and fairly reflect all transactions, dispositions of assets and other events that are subject to regulatory record keeping requirements, including generally accepted accounting principles and other applicable rules, regulations, and criteria for preparing financial statements, and for preparing periodic reports filed with the United States Securities Exchange Commission ("SEC").

62.    Within the same subsection, the Code of Conduct states the following with respect

to retention of financial records, in pertinent part:

> We maintain accurate and complete financial records. These records serve as the basis for managing our business and measuring and fulfilling our obligations to customers, patients, employees, suppliers, and shareholders. These records are also used to demonstrate compliance with tax, regulatory, and financial reporting requirements.

63.    In a subsection titled "Global Compliance," the Code of Conduct states:

> Regardless of where we do business, following applicable local laws, regulations, and Company policies is not only our obligation, but also a precursor to our success. Global laws and regulations can be complex, ever-changing, and vastly different from one country to the next. This is why each of us must be held accountable for knowing the laws, regulations, and Company policies that apply to our individual roles. While it may sound simple to "follow the rules", it can be difficult in practice – especially in our highly regulated and complex industry. Orthofix Personnel are encouraged to seek guidance from supervisors and other trusted leaders when they encounter situations that seem unclear or difficult to navigate. Likewise, Associates should ask an Orthofix business contact if questions or concerns arise.

64.    Within the same subsection, the Code of Conduct states the following with respect to insider trading:

> It is against the law to engage in insider trading. Non-public, material information gained through employment or association with Orthofix stock or other securities. Likewise, you cannot provide an insider "tip" to others who might use it to make a trade in Orthofix securities or otherwise. Information is considered "material" if a reasonable investor would consider it important in making an investment decision.

65.    In a section titled "Be Honest and Ethical," the Code of Conduct states that "[a]ll business dealings must be conducted with a high level of integrity, honestly, and free of fraud and deception."

66.    In a subsection titled "Compliance with Labor Laws and Anti-Human Trafficking," the Code of Conduct states, in pertinent part that the Company "promote[s] a safe and healthy working environment free from any form of abuse."

67.    In a section titled "Be Respectful, Treat Others Fairly, and Protect Our Resources,"

the Code of Conduct states, in pertinent part, that "[a]ll Orthofix Personnel and Associates must be treated with respect and dignity, regardless of gender identity or expression, sex, color, race, religion, age, sexual orientation, disability, ancestry, marital status, national origin, veteran status, pregnancy, or other characteristic."

68.     In a subsection titled "Protect Company Assets," the Code of Conduct states, in pertinent part, that "[t]heft, carelessness, and waste of corporate assets and resources, including paid employment time, have a direct impact on Orthofix's success. Orthofix Personnel and Associates must ensure the Company's assets are utilized efficiently and appropriately for legitimate business purposes."

## ORTHOFIX'S AUDIT COMMITTEE CHARTER

69.     Orthofix's Audit Committee Charter states that the purpose of the Audit Committee is to assist the Board in its oversight responsibilities related to:

> The accounting and financial reporting processes of the Company and the audits of the financial statements of the Company; the performance of the Company's internal audit function; the Company's enterprise risk management program; the Company's finance and related matters; and the Company's compliance with applicable Requirements, in each case, as further described herein.

70.     The Audit Committee Charter further states that the "primary responsibility of the Committee is to oversee the Company's accounting and financial reporting processes and the audit of the Company's financial statements on behalf of the Board."

71.     With respect to the Company's internal controls over financial reporting, the Audit Committee Charter states:

> The Committee shall review management's report on its assessment of the effectiveness of internal control over financial reporting as of the end of each fiscal year and the Auditors' report on the effectiveness of internal control over financial reporting. The Committee shall discuss with management, the [chief internal audit executive] and the Auditors the adequacy and effectiveness of the Company's internal control over financial reporting, including any material weaknesses or

significant deficiencies identified and any special audit steps adopted in light of any material weaknesses or significant deficiencies.

72.     With respect to the Company's disclosure controls, the Audit Committee Charter states that the "Committee shall discuss with management its evaluation of the effectiveness of the Company's disclosure controls and procedures."

73.     The Audit Committee Charter further tasks the Audit Committee with the following responsibilities:

> The Committee shall meet to review and discuss the annual financial statements, including Management's Discussion and Analysis of Financial Condition and Results of Operations, with management and the Auditors prior to the filing of the Company's Annual Report on Form 10-K ("Form 10-K"). The Committee shall recommend to the Board whether the Form 10-K should include the audited annual financial statements.
>
> The Committee shall review and discuss with the Auditors the report from the Auditors required by Section 10A(k) of the Securities Exchange Act of 1934, as amended, including (i) all critical accounting policies and practices to be used by the Company; (ii) all alternative financial treatments of financial information permissible within generally accepted accounting principles ("GAAP") that have been discussed with management, the ramifications of such alternative treatment, and the independent auditor's preferred treatment; and (iii) other material written communications between the Auditors and management, such as management letters or schedules of unadjusted differences.
>
> * * *
>
> The Committee shall meet to review and discuss the quarterly financial statements, including Management's Discussion and Analysis of Financial Condition and Results of Operations, with management and the Auditors prior to the filing of the Company's Quarterly Report on Form 10-Q. Also, the Committee shall discuss the results of the quarterly review and any other matters required to be communicated to the Committee by the Auditors under the standards of the PCAOB.
>
> The Committee may review and discuss with management and the Auditors, as appropriate, earnings press releases (including the use of any pro forma or adjusted non-GAAP information), as well as the substance of financial information and guidance provided to analysts and ratings agencies.
>
> * * *

The Committee shall oversee and periodically review, in coordination with management, the Company's enterprise risk management program.

## SUBSTANTIVE ALLEGATIONS

*Background*

74.     Orthofix is global medical device company that manufactures and distributes products for orthopedic and spine care.

75.     On October 11, 2022, Orthofix announced that it had entered into an agreement to merge with SeaSpine, a medical technology company that designs and manufactures surgical solutions for spine surgeries. During the Merger announcement, the Company further disclosed that SeaSpine's President and CEO, Defendant Valentine, would serve as President, CEO, and as a member of the Board of the Company after the Merger.

76.     On November 8, 2022, the Company filed the first draft of the Registration Statement with the SEC, registering Orthofix shares to be issued to SeaSpine shareholders in exchange for SeaSpine shares following the Merger.

77.     On November 21, 2022, Orthofix and SeaSpine announced that SeaSpine's CFO and COO, Defendant Bostjancic, and SeaSpine's Senior Vice President and General Counsel, Defendant Keran, would serve as CFO and CLO, respectively, of the new combined company.

78.     On November 22, 2022, the SEC declared the Registration Statement effective.

79.     On November 23, 2022, the Company filed with the SEC the misleading Prospectus, soliciting shareholder approval for the Merger. The Prospectus forms part of the Registration Statement.

80.     On January 4, 2023, Orthofix and SeaSpine announced the completion of the Merger.

*False and Misleading Statements*

81.    Throughout the Relevant Period, the Individual Defendants issued false and misleading statements, representing that Company management was committed to conducting business in accordance with the highest ethical and legal standards and that the Company maintained an effective system of internal controls.

82.    On October 11, 2022, Orthofix and SeaSpine filed a Form 8-K, announcing that they had entered into an agreement to merge. The same day, Defendants Serbousek, Valentine, and Bostjancic participated in a call with analysts in connection with the announcement. During the call, it was revealed that Defendant Serbousek would serve as Executive Chairman of the new combined company. In response to a question regarding integration challenges typically associated with other mergers in the orthopedic and spine industry, Defendant Serbousek represented that he did not anticipate facing those difficulties:

> Having been through a couple of those transactions, and I can fully appreciate the dynamics that's going – that went on in those. What I find really different about this is it's a merger of equals. We're bringing two teams together, and we're building a company of the best and balance between the companies. And I think that's a very different dynamic when you're looking at how you put together a product portfolio, how you put together our management team, how do you put together a commercial team. And so I think that's going to give us an advantage.
>
> And in conversations with Keith [Valentine], very similar philosophies between these companies as far as go-to-market philosophies, how we deal with – manage people, how we build businesses. So I think that's the collaboration that you'll see. Often times -- and it's also in the general structure of the management team, assuming an executive chair role, I must still be around and basically be able to help Keith and the team be as successful as possible and -- but not again -- not get in their way. But it comes down to that I see that as a powerful combination of merger of equals versus just an acquisition and then basically -- oftentimes, the previous management team goes away and you're left with assets, but not people and teams.

83.    On November 8, 2022, the first draft of the Registration Statement was filed with the SEC. The Registration Statement represented that Orthofix's Board unanimously approve the Merger, in part, due to the "complementary cultures of Orthofix and SeaSpine, including a strong

performance-based culture focused on integrity, collaboration, innovation, diversity and corporate responsibility."

84.     On November 23, 2022, the Prospectus was filed with the SEC. The Prospectus repeated the statement contained in the Registration Statement that the two companies' "strong performance-based culture[s] focused on integrity, collaboration, innovation, diversity and corporate responsibility." The Prospectus further represented that the combined Company's leadership team would "leverage[] talent within both organizations."

85.     The Offering Documents further contained false and misleading statements regarding the Company's internal controls. For instance, the Offering Documents incorporated by reference the Merger Agreement, which stated the following with respect to Orthofix's internal controls:

> Orthofix maintains a system of "internal control over financial reporting" (as defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act) sufficient to provide reasonable assurance (i) that transactions are recorded as necessary to permit preparation of financial statements in conformity with GAAP, consistently applied, (ii) that transactions are executed only in accordance with the authorization of management and (iii) regarding prevention or timely detection of the unauthorized acquisition, use or disposition of Orthofix's properties or assets. Since January 1, 2020, none of Orthofix, Orthofix's independent accountants, the Orthofix Board or its audit committee has received any oral or written notification of any (A) "significant deficiency" in the internal controls over financial reporting of Orthofix, (B) "material weakness" in the internal controls over financial reporting of Orthofix, or (C) fraud, whether or not material, that involves management or other employees of Orthofix or its Subsidiaries who have a significant role in the internal controls over financial reporting of Orthofix. Since January 1, 2020, any material change in internal control over financial reporting required to be disclosed in any Orthofix SEC Document has been so disclosed.

86.     With respect to the Company's disclosure controls, the Offering Documents stated:

> The "disclosure controls and procedures" (as defined in Rules 13a-15(e) and 15d15(e) of the Exchange Act) utilized by Orthofix are reasonably designed to ensure that all information (both financial and non-financial) required to be disclosed by Orthofix in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified

in the rules and forms of the SEC and that all such information required to be disclosed is accumulated and communicated to the management of Orthofix, as appropriate, to allow timely decisions regarding required disclosure and to enable the chief executive officer and chief financial officer of Orthofix to make the certifications required under the Exchange Act with respect to such reports.

87.    The Offering Documents included a risk disclosure which represented as merely hypothetical the risk of the Company failing to maintain effective internal controls, despite the fact that this risk had already materialized:

> *If we fail to maintain an effective system of internal controls or discover material weaknesses in our internal control over financial reporting, we may not be able to report our financial results accurately or detect fraud, which could harm our business and the trading price of our common stock.*
>
> Effective internal controls are necessary for us to produce reliable financial reports and are important in our effort to prevent financial fraud. We are required to periodically evaluate the effectiveness of the design and operation of our internal controls. As has occurred in several years prior, these evaluations may result in the conclusion that enhancements, modifications, or changes to our internal controls are necessary or desirable. While management evaluates the effectiveness of our internal controls on a regular basis, these controls may not always be effective. There are inherent limitations on the effectiveness of internal controls, including collusion, management override, and failure of human judgment. Because of this, control procedures are designed to reduce rather than eliminate business risks. If we fail to maintain an effective system of internal controls or if management or our independent registered public accounting firm were to discover material weaknesses in our internal controls, we may be unable to produce reliable financial reports or prevent fraud, which could harm our financial condition and operating results, and could result in a loss of investor confidence and a decline in our stock price.

88.    The Offering Documents incorporated the Company's 2021 annual report, filed with the SEC on Form 10-K (the "2021 10-K"), which was signed by Defendants Serbousek, Rice, Burzik, Burris, Hannon, Hinrichs, Marks, Paolucci, Sicard, and West. The 2021 10-K stated the following with respect to the Company's internal controls:

**Management's Report on Internal Control over Financial Reporting**

The Company's management is responsible for establishing and maintaining adequate internal control over financial reporting (as such term is defined in the

Exchange Act Rule 13a-15(f)). The Company's internal control over financial reporting includes those policies and procedures that (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. GAAP, and that receipts and expenditures of the Company are being made only in accordance with authorizations of management and directors of the Company; and (iii) provide reasonable assurance regarding the prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the financial statements.

Internal control over financial reporting is designed to provide reasonable assurance to the Company's management and board of directors regarding the preparation of reliable financial statements for external purposes in accordance with U.S. GAAP. Because of the inherent limitations in any internal control, no matter how well designed, misstatements may occur and not be prevented or detected. Accordingly, even effective internal control over financial reporting can provide only reasonable assurance with respect to financial statement preparation. Further, the evaluation of the effectiveness of internal control over financial reporting was made as of a specific date, and continued effectiveness in future periods is subject to the risks that controls may become inadequate because of changes in conditions or that the degree of compliance with the policies and procedures may decline.

In connection with the preparation and filing of this Annual Report, the Company's management, including our President and Chief Executive Officer and our Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2021, based on the framework set forth in "Internal Control—Integrated Framework (2013)" issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). Based on its evaluation, the Company's management concluded that, as of December 31, 2021, the Company's internal control over financial reporting is effective based on the specified criteria.

89.    The Offering Documents further assured that there had been no changes in the

Company's internal controls over financial reporting. Similarly, the all of the Company's quarterly

reports filed on Form 10-Q with the SEC during 2022 stated the following:

There was no change in our internal control over financial reporting, known to the President and Chief Executive Officer or the Chief Financial Officer that occurred for the quarterly period covered by this report that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

90.    With respect to the Company's legal and ethical compliance, the Offering

Documents stated the following:

> Orthofix is in compliance in all material respects with all Laws relating to the employment of labor, including all such Laws relating to wages, hours, civil and/or human rights, harassment, discrimination and/or retaliation in employment, reasonable accommodation, unfair competition, affirmative action, pay equity, employment equity, workers' compensation, safety and health, worker classification (including employee-independent contractor classification and the proper classification of employees as exempt employees and non-exempt employees), WARN and any similar foreign, state, provincial or local "mass layoff" or "plant closing" Law. No Misconduct Allegation has been made at any time within the past four (4) years against any Person who is or was an officer, director, manager or supervisory-level employee of Orthofix in such person's capacity as such or, to the knowledge of Orthofix, in any other capacity, nor are any Misconduct Allegations pending or, to the knowledge of Orthofix, threatened, nor is there any reasonable basis for such a Misconduct Allegation. Within the past four (4) years, Orthofix has not entered into any settlement agreement, tolling agreement, non-disparagement agreement, confidentiality agreement or nondisclosure agreement, or any Contract or provision similar to any of the foregoing relating directly or indirectly to any Misconduct Allegation against Orthofix or any person who is or was an officer, director, manager, employee or independent contractor of Orthofix.

91.     On January 4, 2023, Orthofix and SeaSpine issued a joint press release, announcing the successful completion of the Merger. The press release stated that "the combined Orthofix is a leading global spine and orthopedics company with a complimentary portfolio of biologics, innovative spinal hardware solutions, market-leading bone growth therapies, specialized orthopedic solutions and a leading surgical navigation system." The press release quoted Defendant Valentine as stating that he was "privileged to lead this talented team and excited for all of the opportunities that lie ahead . . . together, we are stronger and better positioned to deliver innovative, quality-driven solutions for surgeons in their work to improve patients' lives."

92.     On March 6, 2023, the Company filed its 2022 annual report on Form 10-K with the SEC (the "2022 10-K"), which was signed by Defendants Valentine, Bostjancic, Burzik, Serbousek, Hannon, Henneman, Hinrichs, Maniar, and Paolucci. The 2022 10-K stated the following:

It is our fundamental policy to conduct business in accordance with the highest ethical and legal standards. We have a comprehensive compliance and ethics program, which is overseen by a Chief Ethics and Compliance Officer, who reports directly to our Chief Executive Officer and the Compliance Committee of the Board of Directors. The program is intended to promote lawful and ethical business practices throughout our domestic and international businesses. It is designed to prevent and detect violations of applicable federal, state, and local laws in accordance with the standards set forth in guidance issued by the U.S. Department of Justice ("U.S. DOJ") ("Evaluation of Corporate Compliance Programs" (updated June 2020)), the Office of Inspector General (HCCA-OIG "Measuring Compliance Program Effectiveness: A Resource Guide" (March 2017)), and the U.S. Sentencing Commission ("Effective Compliance and Ethics Programs" (November 2014)). Key elements of the program include:

- Organizational oversight by senior-level personnel responsible for the compliance function with the Company
- Written standard and procedures, including a Corporate Code of Conduct
- Methods for communicating compliance concerns, including anonymous reporting mechanisms
- Investigation and remediation measures to ensure a prompt response to reported matters and timely corrective action
- Compliance education and training for employees and contracted business associates
- Auditing and monitoring controls to promote compliance with applicable laws and to assess program effectiveness
- Disciplinary guidelines to enforce compliance and address violations
- Due diligence reviews of high risk intermediaries and exclusion lists screening of employees and contracted business associates
- Risk assessments to identify areas of compliance risk.

93.     On April 27, 2023, Orthofix filed a proxy statement on Form DEF 14A with the

SEC (the "2023 Proxy"), soliciting shareholder approval for, *inter alia*, (i): the election of

Defendants Burris, Burzik, Essig, Hannon, Henneman, Hinrichs, Maniar, Paolucci, and Valentine;

(ii) the compensation of certain of the Company's executive officers, including Defendants

Serbousek, Rice, and Elting; (iii) an amendment to the Company's Certificate of Incorporation to

"protect certain officers of the Company against personal liability to our stockholders for monetary

damages for breach of the duty of care in certain actions as permitted by Section 102(b)(7) of the

[Delaware General Corporation Law]"; and (iv) an amendment to the Company's 2012 Long Term

Incentive Plan to make an additional 2,900,000 shares of Company stock available for issuance to

Company employees, including the Individual Defendants, as incentive compensation.

94.     With respect to the Company's Code of Conduct and its role in promoting legal and

ethical compliance, the 2023 Proxy stated:

> We maintain codes of conduct (our "Codes of Conduct") for each of our legacy Orthofix
> and SeaSpine businesses that are applicable to all employees worldwide of the respective
> business. The Code of Conduct for the legacy Orthofix business, to which all of our
> directors and executive officers are subject, is available for review under the "Investors >
> Governance > Governance Documents" section of our website at www.orthofix.com.
>
> The goals of our Codes of Conduct, as well as our general corporate compliance and ethics
> program (which we have branded the Integrity Advantage™ Program), are to deter
> wrongdoing and to promote (i) honest and ethical conduct, including the ethical handling
> of actual or apparent conflicts of interest between personal and professional relationships,
> (ii) full, fair, accurate, timely, and understandable disclosure in reports and documents that
> we file with, or submit to, the SEC and in other public communications made by us, (iii)
> compliance with applicable governmental laws, rules, and regulations, (iv) the prompt
> internal reporting of violations of our Codes of Conduct to appropriate persons identified
> therein, and (v) accountability for adherence to our Codes of Conduct. Our Codes of
> Conduct apply to all areas of professional conduct, including customer relationships,
> conflicts of interest, financial reporting, use of company assets, insider trading, intellectual
> property, confidential information, and workplace conduct. Under our Codes of Conduct,
> employees, directors, and executive officers are responsible for promptly reporting
> potential violations of any law, regulation, or our Codes of Conduct to appropriate
> personnel or via a hotline we have established.
>
> We intend to disclose any substantive amendment to, or a waiver from, a provision of the
> Code of Conduct for the legacy Orthofix business that applies to our principal executive
> officer, principal financial officer, principal accounting officer or controller, or persons
> performing similar functions and that relates to any element of the code of ethics definition
> enumerated in paragraph (b) of Item 406 of Regulation S-K by posting such information
> on our website at the address specified above.

95.     With respect to the Company's risk assessment and risk management functions, the

2023 Proxy stated:

> The Board plays an important role in overseeing various risks that we may face
> from time to time. While the full Board has primary responsibility for risk
> oversight, it utilizes its committees, as appropriate, to monitor and address the risks
> that may be within the scope of a particular committee's expertise or charter. For
> example, the Audit and Finance Committee oversees our financial statements and

receives reports on the Company's enterprise risk management program, the Compliance and Ethics Committee assists in the Board's oversight of compliance with certain legal and regulatory requirements, the Compensation and Talent Development Committee oversees the Company's compensation plans and assures that such plans properly discourage unnecessary and inappropriate risk taking by management, and the Nominating, Governance and Sustainability Committee oversees the identification of potential Board or executive candidates and the Company's ESG programs, inclusive of climate-related matters. The Board believes the composition of its committees, and the distribution of the particular expertise of each committee's members, makes this an appropriate structure to more effectively monitor these risks.

An important feature of the Board's risk oversight function is to receive updates from its committees and management, as appropriate. In that regard, the Board regularly receives updates from the President and Chief Executive Officer, Chief Financial Officer, Chief Legal Officer, and Chief Ethics and Compliance Officer, including in connection with material litigation and legal compliance matters. The Board also receives updates at quarterly in-person or virtual Board meetings on committee activities from each committee Chair. In addition, the senior executive of each Company division or business unit periodically reviews and assesses the most significant risks associated with his or her division or unit. These assessments are then aggregated by our management team and presented to the Board. The Board regularly discusses with management these risk assessments and includes risk management and risk mitigation as part of its oversight of the enterprise risk management program and its ongoing strategic planning process.

96.     The statements identified above were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) Defendants Valentine, Bostjancic, and Keran engaged in misconduct in violation of the Company's Code of Conduct; and (ii) the Company's internal controls were materially deficient.

**The Truth Emerges**

97.     On September 12, 2023, the Company issued a press release, announcing a "unanimous decision by the Board's independent directors to terminate for cause Keith Valentine, John Bostjancic and Patrick Keran from those respective roles" after an investigation by the Board that revealed "that each of these executives engaged in repeated inappropriate and offensive

conduct that violated multiple code of conduct requirements and was inconsistent with the Company's values and culture." Specifically, the press release stated:

> Orthofix Medical Inc. (NASDAQ: OFIX), a leading global spine and orthopedics company, today announced that Catherine Burzik, Chair of the Orthofix Board of Directors, has been appointed Interim Chief Executive Officer; Geoffrey Gillespie, Orthofix Vice President, Corporate Controller, has been appointed Interim Chief Financial Officer; and Puja Leekha, Orthofix Senior Vice President, Chief Ethics and Compliance Officer, has been appointed Interim Chief Legal Officer. ***The appointments are effective immediately and follow the unanimous decision by the Board's independent directors to terminate for cause Keith Valentine, John Bostjancic and Patrick Keran from those respective roles. The Board also requested that Mr. Valentine resign from the Board.*** The Board will immediately begin a search for permanent successors.
>
> ***The Board's decision follows an investigation conducted by independent outside legal counsel and directed and overseen by the Company's independent directors. As a result of the investigation, the Board determined that each of these executives engaged in repeated inappropriate and offensive conduct that violated multiple code of conduct requirements and was inconsistent with the Company's values and culture.*** These matters are unrelated to and do not impact the Company's strategy, results of operations or previously filed financial statements.
>
> Catherine Burzik, Chair of the Orthofix Board, said, ***"Orthofix's core values are built around fostering, cultivating and preserving a culture that is respectful, and we do not condone harassing or inappropriate conduct or statements of any kind. We require all employees - and especially our leaders - to behave in accordance with the Company's values. The Board did not make these decisions lightly. We believe they are necessary to ensure our employees, investors, customers, and other stakeholders have confidence in the Company's leaders."***

98.    On this news, the price of Orthofix's stock declined 30.2% in one day, from a close of $18.63 per share on September 11, 2023 to a close of $13.01 per share on September 12, 2023.

99.    Despite this disclosure, the price of Company stock remained artificially inflated as the Individual Defendants continued to issue false and misleading statements regarding the Company's internal controls.

100.    On November 8, 2023, the Company filed a quarterly report on Form 10-Q with the SEC for its third fiscal quarter of 2023, which stated that "[t]here was no change in [the

Company's] internal control over financial reporting that occurred during the quarterly period covered by this report that has materially affected, or is reasonably likely to materially affect, [its] internal control over financial reporting."

101.    On March 5, 2024, the truth fully emerged when the Company filed its 2023 annual report on Form 10-K with the SEC (the "2023 10-K"), which revealed that the Company's internal controls were not effective:

> In connection with the preparation and filing of this Annual Report, the Company's management, including our President and Chief Executive Officer and our Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2023, based on the framework set forth in "Internal Control—Integrated Framework (2013)" issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). Based on its evaluation, the Company's management concluded that our internal control over financial reporting was not effective as of December 31, 2023, due to a material weakness in the design and operation of certain management review controls pertaining to business combinations and assessing recoverability of goodwill, resulting from insufficient evidence supporting the precision over the determination of certain estimates and insufficient evidence supporting the operating effectiveness of the associated review controls.
>
> As permitted by the SEC Staff interpretive guidance for recently acquired businesses, management's assessment and conclusion on the effectiveness of the Company's disclosure controls and procedures as of December 31, 2023, excludes an assessment of the internal control over financial reporting of the SeaSpine business acquired on January 5, 2023. SeaSpine represents approximately 52% of consolidated total assets and approximately 35% of consolidated revenues as of and for the year ended December 31, 2023.

102.    The 2023 10-K further disclosed that the Company's independent auditor, Ernst & Young LLP, determined that Orthofix failed to maintain effective internal controls as of December 31, 2023:

> We have audited Orthofix Medical Inc.'s internal control over financial reporting as of December 31, 2023, based on criteria established in Internal Control— Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) (the COSO criteria). In our opinion, because of the effect of the material weakness described below on the achievement of the objectives of the control criteria, Orthofix Medical Inc. (the Company) has

not maintained effective internal control over financial reporting as of December 31, 2023, based on the COSO criteria.

103.    On this news, the price of Orthofix's stock declined .5%, from a close of $13.07 per share on March 4, 2024, to a close of $13.00 per share on March 5, 2024.

### Insider Sales

104.    During the Relevant Period, Defendant Maniar made sold Company stock while in possession of material non-public information concerning the Company's financial condition and business prospects.

105.    Defendant Maniar reaped $75,650 in proceeds selling her personal holdings of Company stock at an average price of $17.75 per share, more than 130% of the price of Orthofix stock after the corrective disclosures on March 5, 2024.

### Damages to Orthofix

106.    As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Actions, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, excessive and unjust compensation paid to directors and officers of the Company who were breaching their fiduciary duties and violating federal securities laws, the costs of investigating and remedying the harm caused by Defendant Valentine's, Bostjancic's, and Keran's misconduct, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

107.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties and other violations of law.

108.    Orthofix is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

109.    Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

110.    Plaintiff is an owner of Orthofix stock and has been a continuous holder of the Company's common shares at all relevant times.

111.    At the time this action was commenced, the nine-member Board was comprised of Defendants Burris, Hannon, Henneman, Maniar, and Paolucci (the "Director Defendants"), along with Alan Bazaar, Massimo Calafiore, Michael Finegan, and Charles Kummeth, who are not parties to this action. Accordingly, Plaintiff is only required to show that five directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all five of the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

112.    The Director Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Director Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to

conceal those wrongs. The Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized, and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Director Defendants could not fairly and fully prosecute such a suit even if they instituted it.

113.    The Director Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Director Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

114.    As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Orthofix, the Director Defendants knew, or should have known, the material facts surrounding the Company's internal controls and the Company's legal and ethical compliance.

115.    Defendants Burris, Hannon, and Paolucci are not disinterested or independent because they are named as defendants, and face significant personal liability, in the *O'Hara* Securities Class Action based on substantially the same wrongdoing as alleged herein, specifically issuing materially false and misleading statements during the Relevant Period.

116.    Defendants Burris, Henneman, and Maniar (the "Audit Defendants") serve as members of the Audit Committee and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities

related to internal controls over financial reporting and public disclosure requirements. Throughout the Relevant Period, however, these Defendants breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices and the adequacy of the Company's internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

117.    Additionally, each of the directors received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company. Indeed, all of the Individual Defendants benefitted directly from the wrongdoing alleged herein. Specifically, the Individual Defendants benefitted from the artificial inflation of the price of the Company's stock and the resulting increase in the value of Orthofix stock and stock options they held.

118.    The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Director Defendants to also adhere to Orthofix's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

119.    Furthermore, demand in this case is excused because each of the directors derive substantial revenue from the Company, control the company, and are indebted to each other. These

conflicts of interest have precluded the current directors from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct. Significantly, none of the Board's current members have taken remedial action to redress the conduct alleged herein. For instance, none of the Company's current directors have sought to enforce Orthofix's Incentive Compensation Recovery Policy, which provides for the recovery of excess incentive compensation "in the event that [Orthofix is] required to prepare an accounting restatement due to material noncompliance by Orthofix with any financial reporting requirement under the securities laws."

120.    The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

121.    The acts complained of herein constitute violations of fiduciary duties owed by Orthofix's officers and directors, and these acts are incapable of ratification.

122.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Orthofix. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that

eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Orthofix, there would be no directors' and officers' insurance protection. Accordingly, the Directors Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

123. If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Orthofix to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

124. Accordingly, for all of the reasons set forth above, at least five of the Company's current directors cannot consider a demand with disinterestedness and independence. Consequently, a pre-suit demand on the Board is futile and excused.

## COUNT I

**Against the Individual Defendants for Violations of § 14(a)**
**of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9)**

125. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

126. The Individual Defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

127. The Individual Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the Prospectus, which

solicited shareholder approval for the Merger. As alleged above, the Prospectus represented that SeaSpine's leadership, including Defendants Valentine, Bostjancic, and Keran, exhibited "strong performance-based culture[s] focused on integrity, collaboration, innovation, diversity and corporate responsibility." Further, the Prospectus was materially misleading because it failed to disclose that: (i) Defendants Valentine, Bostjancic, and Keran engaged in misconduct in violation of the Company's Code of Conduct; and (ii) the Company's internal controls were materially deficient.

128.    In addition to the false and misleading statements contained in the Prospectus, the Individual Defendants disseminated and/or permitted the dissemination of materially false and misleading statements in the 2023 Proxy filed with the SEC. As alleged above, this filing contained materially false and misleading statements concerning the Company's internal controls and its legal and ethical compliance.

129.    The 2023 Proxy was used to solicit shareholder votes in connection with: (i) the election of Defendants Burris, Burzik, Essig, Hannon, Henneman, Hinrichs, Maniar, Paolucci, and Valentine; (ii) the compensation of certain of the Company's executive officers, including Defendants Serbousek, Rice, and Elting; (iii) an amendment to the Company's Certificate of Incorporation to "protect certain officers of the Company against personal liability to our stockholders for monetary damages for breach of the duty of care in certain actions as permitted by Section 102(b)(7) of the [Delaware General Corporation Law]"; and (iv) an amendment to the Company's 2012 Long Term Incentive Plan to make an additional 2,900,000 shares of Company stock available for issuance to Company employees, including the Individual Defendants, as incentive compensation.

130.    The 2023 Proxy indicates that a significant portion of executive compensation is

performance based: "88% of our Chief Executive Officer's annual total target direct compensation and 81% of our other named executive officers' annual total target direct compensation was performance-based or variable."

131.    The materially false and misleading statements contained in the 2023 Proxy regarding the Company's internal controls and the Company's legal and ethical compliance therefore misleadingly induced shareholders to vote in favor of: (i) the election of Defendants Burris, Burzik, Essig, Hannon, Henneman, Hinrichs, Maniar, Paolucci, and Valentine to the Board; (ii) performance-based compensation to Defendants Serbousek, Rice, and Elting, to which they were not entitled; (iii) an amendment to the Company's Certificate of Incorporation providing exculpation to the Company's officers; and (iv) an amendment to the Company's 2012 Long Term Incentive Plan to make an additional 2,900,000 shares of Company stock available for issuance as incentive compensation.

132.    In addition to the harm caused to Orthofix by the election of directors and the exculpation provided to officers who were breaching their fiduciary duties to the Company, the payment of unwarranted performance-based compensation to Defendants Serbousek, Rice, and Elting was a waste of corporate assets.

## COUNT II

### Against the Individual Defendants for
### Breach of Fiduciary Duties

133.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

134.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

135.   The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

136.   The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

137.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Actions, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Actions, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

138.   Plaintiff, on behalf of Orthofix, has no adequate remedy at law.

## COUNT III

**Against Defendant Maniar**
**For Breach of Fiduciary Duties (*Brophy* Claim)**

139.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

140.    During the Relevant Period, the Defendant Maniar held a position within the Company that provided her access to confidential, proprietary information concerning the Company's financial condition and future business prospects.  Notwithstanding her duty to refrain from trading in Orthofix common stock under the circumstances, Defendant Maniar sold personal holdings in the Company at artificially inflated prices prior to the disclosure of the true state of the Company's finances and future prospects.

141.    The insider sales detailed herein were not part of any regular pattern of sales and were suspicious in terms of timing and amount.

142.    The information at issue was proprietary, non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which Defendant Maniar misappropriated to her own benefit when she sold Orthofix stock. At the time of her stock sale, Defendant Maniar was aware that the Company's business and prospects were declining, which when disclosed to the market would cause the inflated price of the Company's common stock to significantly decrease.  Defendant Maniar's sales of stock while in possession and control of this material, adverse, non-public information was a breach of her fiduciary duties of loyalty and good faith.

143.    Plaintiff, on behalf of Orthofix, has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

144.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

145.    By encouraging and accomplishing the illegal and improper actions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated,

and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have

each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties,

waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained

of herein.

146.    Plaintiff, on behalf of Orthofix, has no adequate remedy at law.

## COUNT V

### Against the Individual Defendants for
### Unjust Enrichment

147.    Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

148.    By their wrongful acts and omissions, the Individual Defendants were unjustly

enriched at the expense of and to the detriment of Orthofix.

149.    The Individual Defendants were unjustly enriched by their receipt of bonuses, stock

options, or similar compensation from Orthofix that was tied to their performance or to the

artificially inflated valuation of Orthofix.

150.    Defendant Maniar was further unjustly enriched with respect to insider sales of

Company stock.

151.    Plaintiff, as a stockholder and representative of the Company, seeks restitution from

the Individual Defendants, and seeks an order from this Court disgorging all profits, benefits, and

other compensation obtained by the Individual Defendants as a result of their wrongful conduct

and fiduciary breaches.

152.    As a direct and proximate result of the Individual Defendants' misconduct, the

Company has suffered significant damages, as alleged herein.

153.    Plaintiff, on behalf of Orthofix, has no adequate remedy at law.

## COUNT VI

**Against the Individual Defendants
for Waste of Corporate Assets**

154.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

155.    The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Orthofix's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

156.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, among other things, incurring and paying defense costs in connection with the Securities Class Actions, and approving performance-based compensation linked to the Company's perceived successes.

157.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

158.    Plaintiff on behalf Orthofix has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and

all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding punitive damages;

D.    Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: December 18, 2024

**THE BROWN LAW FIRM, P.C.**

By: */s/ Saadia Hashmi*
Saadia Hashmi
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: shashmi@thebrownlawfirm.net

**OF COUNSEL:**

*Attorneys for Plaintiff*

**RIGRODSKY LAW, P.A.**
Timothy J. MacFall
Samir Aougab
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683.3516
Facsimile: (302) 654-7530
Email: tjm@rl-legal.com
Email: sa@rl-legal.com

## **VERIFICATION**

I, Jake Vincent, am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th day of December, 2024.

DocuSigned by:

*Jake Vincent*

17729BDF50CAC4BE...

Jake Vincent